## KENNETT et al *vs.* COLE COUNTY COURT.

The title of the State of Missouri to the 16th sections granted by the act of Congress of March 6, 1820, for school purposes, is not impaired or destroyed by the *previous* location of a New Madrid certificate upon these sections.

### APPEAL FROM COLE CIRCUIT COURT.

EDWARDS for appellants.

By the 6th section of the act of Congress authorizing the people of Missouri Territory to form a State government, sundry propositions were submitted by Congress to the people of said territory, in convention, for their acceptance or rejection. One of these propositions was, that section numbered 16 in every township, and when said section had been sold, or otherwise disposed of, other lands equivalent thereto, and as contiguous as might be, should be granted to said State for the use of the inhabitants of said township, for the use of schools. This proposition was accepted by the people in an ordinance reciting the identical language used in the act of Congress, subsequently adopted by the people. See. Rev. Stat. 1845, page 20 sec. 6—also page 23, ordinance declaring the assent of the people to the propositions submitted by Congress.

The appropriation of the 16th section to school purposes was a matter of contract between Congress and the people of the State, and was conditional in its nature. Congress agreed to give and the people to receive the 16th section for school purposes; but there was coupled with this gift a qualification or reservation. This qualification or reservation was, that if the 16th section had not been sold or otherwise disposed of, then the inhabitants of the township were to have it for school purposes. If it had been disposed of, other lands were to be selected in lieu thereof for the use of schools. There are two contingencies under which the right of the inhabitants of a township to the 16th section may fail. The one is, where the 16th section was sold at the time the propositions of Congress were accepted by the people. The other, when said section had been otherwise than by sale disposed of at the ratification of said propositions. From this it is manifest, that neither Congress nor the members of the

convention, considered the right of the inhabitants of the township absolute and paramount to all other titles thereto ; but, on the contrary, admit that there may be better titles by providing a remedy for such cases.

Was this 16th section disposed of at the time the propositions submitted by Congress were accepted ? If it was, then the inhabitants of that township had no right thereto. The county court of Cole county had no right to sell the same. The purchaser acquired no title by virtue of a purchase at such sale. The bond given for the purchase money was void for want of consideration and should be cancelled and given up to the complainants ; and the circuit court erred in refusing to decree according to the prayer of the complainants. If the 16th section had not been sold, or otherwise disposed of, the judgment of the circuit court was right. Upon this point the case turns.

It is contended by the appellants, that the United States grovernment had disposed of this 16th section before the acceptance of said propositions referred to, and that all her title was in Patterson under the act of Congress for the relief of the inhabitants of New Madrid. Patterson's certificate was issued on the 4th of Dec. 1816, was located on the 30th of January following. The claim was surveyed on the 12th of May 1819 and a plat of the survey was forwarded to the general land office on the 6th of January 1820. Thus it will be seen that Patterson had performed every act which was required of him, or which he could perform to make his title good before the passage of the act of Congress submitting said proposition to the people of the then territory of Missouri for their acceptance or rejection and consequently before the acceptance thereof by the people. The land, then, had been disposed of, and inhabitants of the township had no title to the 16th section, and their remedy and their duty was to have selected other lands in lieu thereof. If there had been a doubt as to the correctness of this position, that doubt is removed by the issuing of the patent to Patterson. This patent was issued when all the facts and circumstances were fresh and well understood, and unless that patent was obtained through fraud, or under circumstances not warranted by law, it was conclusive. It is submitted that the validity of the patent cannot be called in question under a demurrer. Whether properly or improperly issued is a fact which should be tried upon a proper issue between the parties.

It is admitted that it has ever been the policy of the government to encourage common schools by donations of lands for that purpose ; but this is not and should not be done by sacrificing the rights of private individuals.

All the acts of Congress reserving the 16th section from sale, for school purposes, make the reservation take effect *after* the survey of the land not *before*. It is a reservation from sale and not a donation or grant. There is no grant of the lands until the passage of the act of Congress above referred to. If it be necessary, to make the reservation good, that the lands should be surveyed, then this settles the question, for Patterson's survey was made long before the survey of the lands. Statutes at Large, vol. 2, page 620, § 10.—Act of Congress March 1812, organizing a Territorial Government in Missouri, sec. 14—Stat. at Large, vol. 3, 407, sec. 3.

STRINGFELLOW, Att'y. Gen'l. for the appellee.

Sections 16 in each township have been reserved from sale by the United States since the purchase of Louisiana. Their sale never having been authorised by law, a New Madrid claim could not be located on them, and if such location has been made it is void. 2 Howard 317. Laws of United States.

NAPTON, J., delivered the opinion of the court.

This was a bill in Chancery by the administrators and heirs of J. M.

White, to cancel a bond given by the decedent to the county of Cole for the consideration of a portion of the 16th section in township 44, range 10.

The grounds of complaint are that the county had no title. The objection to the title is, that in 1816, a New Madrid certificate was issued in favor of one Patterson, and located upon said land in January, 1817 ; that a survey was made in 1819, and that the plat of survey forwarded to the Recorder on the 6th January, 1820. A patent issued to said Patterson, May 7, 1822.

A general demurrer was filed to this bill, which was sustained, and the case was brought here by appeal.

The only question necessary to be determined is, whether the title of the State to the 16th section, granted by act of Congress in 1820, is in any respect impaired or destroyed by the previous location of a New-Madrid certificate upon these sections.

A reference to the land laws of the United States will show, that it has been the policy of the government, from the very commencement of its system of disposing of the public lands, to reserve the sixteenth section of each township for the use of schools. This was done in the laws for the disposition of the lands in the North-West Territory, and subsequently in the Territory of Orleans, and was adopted in the first act which authorised the sale of land in the territory of Louisiana. The act of March 3, 1811, which authorised the President of the United States to cause these lands to be surveyed and sold, excepted from its operation the section numbered sixteen, which the act declared "should be reserved in each township for the support of schools within the same."

The act for the relief of the sufferers by earthquakes at New-Madrid was passed in 1815. That act authorized those persons who were objects of the bounty of Congress to make their locations upon any of the public domain which was authorised to be sold. The sixteenth sections were not lands of this description ; they were not authorised to be sold, but expressly reserved for the use of the inhabitants of the townships.

The act of Congress of March 6, 1820, for the admission of Missouri into the Union, provided "that section numbered sixteen, in every township, and, when such section has been sold, or otherwise disposed of, other lands equivalent thereto, and as contiguous as may be, shall be granted to the State for the use of the inhabitants of such township, for the use of schools." The propositions contained in this act of Congress

were accepted by the people of Missouri during the same year, and so declared by an ordinance of their convention. The grant of the sixteenth sections to this State became thereby unconditional, except where they had been previously sold or disposed of. The patent upon Patterson's certificate of location, did not issue until 1822. Assuming the location made in 1817 to have been merely voidable, yet Congress vested the title in this State in 1820, and prior to the issuance of the patent to the holder of the New-Madrid certificate. The State had then the older legal title, and the purchaser of this title must prevail over the title acquired in 1817 under the act of 1815, for the relief of those who suffered at New-Madrid.

But under the late decisions of the supreme court of the United States this question could hardly admit of discussion. That court has given a construction to the act of Congress of July 4, 1836, confirming certain Spanish claims therein mentioned, which applies with increased force and pertinancy to the act of March 6, 1820. The former act spoke of sales and *locations* and exempted them *in terms* from the confirmation. No sales or locations could have been made in reference to the lands embraced in that act, except such as were at least voidable, and perhaps void; and the only object of the law in protecting any sales or locations was to protect such as were involved and would have been lost without such protection. As all the lands embraced in the act had been duly claimed, and the claims filed in the Recorder's office, and consequently were all embraced in the provisions of the act of 1811, which reserved them from sale, there was nothing left for the act to operate on. The act of 1820, is different in phraseology and intent. Titles may have existed prior to the act of 1811 which first reserved the sixteenth sections from sale titles acquired under another government. It was proper that Congress should provide other equivalent lands for the inhabitants of the townships where this was the case.

But if a New-Madrid location patented long prior to 1836 be of no validity as against a confirmation under the act of Congress of that year, it must follow that such location, patented subsequent to 1820, cannot prevail against a grant to the State of Missouri by the act of Congress of March 6, 1820.

We think the demurrer was properly sustained, and the judgment is therefore affirmed.